UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| DEANNA Y., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:22-CV-207-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| KILOLO KIJAKAZI, *Commissioner of* ) | **AND ORDER** |
| *Social Security*, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Deanna Y.'s ("Plaintiff's") application for disability insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff [R. 14] and the Commissioner [R. 15] have filed their respective briefs. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

**I.  Background**

Plaintiff is fifty-four years old and has a high school education. *See* [Transcript of Administrative Record (hereinafter, "Administrative Transcript" or "Tr.") (attached to Commissioner's Answer as Exhibits 1–9), at 22]. Plaintiff is presently unemployed but has past relevant work experience as a cashier/checker, department store manager, customer service manager, and claims associate. [Tr. 22]. On October 11, 2018, Plaintiff protectively filed an application for disability insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"), alleging disability

beginning on April 10, 2018. [Tr. 177–83]. Plaintiff claimed she could not perform work at substantial gainful levels due to degenerative osteoarthritis of the lumbar spine, rotational scoliosis, high blood pressure, severe SI joint dysfunction, bulging discs, "degeneration of lumbar or lumbosacral," and intervertebral discs. [Tr. 200]. Her application was denied initially on February 12, 2019 [Tr. 94] and upon reconsideration on June 3, 2019 [Tr. 100]. At Plaintiff's request, a hearing was conducted in Lexington, Kentucky before Administrative Law Judge Tommye C. Mangus ("ALJ Mangus") on January 5, 2021. [Tr. 32–59]. ALJ Mangus issued an unfavorable decision on January 25, 2021. [Tr. 12–31].

ALJ Mangus applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since April 10, 2018, her alleged onset date. [Tr. 17]. Second, Plaintiff has the severe impairments of degenerative disc disease, osteoarthritis, residual limitations following bilateral shoulder surgical intervention, and hypertension. [Tr. 19]. Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. [Tr. 20]. ALJ Mangus then determined Plaintiff has the residual functional capacity ("RFC") to perform "light work"[1] as

---

[1] "To determine the physical exertion requirements of work in the national economy," the Social Security Administration classifies jobs as "sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. The Administration defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.* at § 404.1567(b).

defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [The work must] not require lifting or carrying more than ten pounds occasionally; standing or walking in excess of four total hours during an eight hour workday; sitting in excess of six total hours during an eight hour workday; any climbing ladders, ropes, or scaffolds; more than occasional climbing stairs and ramps; more than occasional balancing, stooping, kneeling, crouching, crawling, or overhead reaching; or more than frequent exposure to unprotected heights or dangerous, moving machinery.

[Tr. 19]. Fourth, ALJ Mangus found Plaintiff unable to perform her past relevant work as actually or generally performed. [Tr. 22]. Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Mangus determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [Tr. 22].

Based on this evaluation, ALJ Mangus concluded that Plaintiff was not disabled, as defined in the Social Security Act, from April 10, 2018 through the date of her decision. [Tr. 23]. Plaintiff sought review of ALJ Mangus's decision. [Tr. 7]. The Appeals Council declined review on June 28, 2022. [Tr. 1]. At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. [R. 1].

**II.  Standard of Review**

"When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may 'not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'" *McNabb v. Colvin*, No. 3:16CV-00298-DW, 2017 WL 489421, at *2 (W.D. Ky. Feb. 6, 2017) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her

conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (same). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Analysis

Plaintiff raises two issues with ALJ Mangus's decision. First, Plaintiff suggests ALJ Mangus's Residual Functional Capacity finding is inconsistent with the weight of the record evidence. [R. 14-1, p. 2]. Second, Plaintiff criticizes ALJ Mangus's "failure to resolve the conflict" between the testimony of impartial vocational expert Stephanie Mays ("VE Mays") and the Dictionary of Occupational Titles ("DOT"). *Id.* Relying on these objections, Plaintiff submits ALJ Mangus's decision was not supported by substantial evidence. *Id.* at 3.

The Commissioner argues substantial evidence supports ALJ Mangus's decision, that she properly determined Plaintiff could perform only "a reduced range of light work," and that she reasonably relied on the testimony of VE Mays. [R. 15, pp. 3, 5, 8]. The Commissioner therefore urges that ALJ Mangus's decision should be affirmed. *Id.* at 10.

#### A. Residual Functional Capacity Finding

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity

4

finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In addition to considering medical records and physician opinions in forming their RFC, ALJs must assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a). The administrative law judge then considers the exertion level at which the claimant could perform work, if any, then "takes this information and plugs it into a grid that accounts for other factors— age, education, and previous work experience—and that determines whether the claimant may be able to handle substantial gainful work." *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 47 (6th Cir. 2018) (citation omitted).

Plaintiff claims ALJ Mangus's RFC finding is inconsistent because after she "correctly acknowledged" that Plaintiff could only occasionally lift ten pounds, ALJ Mangus still found her able to perform "light work," which, "[a]s defined by the statute," would require her to occasionally lift up to twenty pounds and frequently lift up to ten. [R. 14-1, p. 9]. Plaintiff suggests she should have instead been limited to "sedentary work." *Id.* The Commissioner counters that, in Plaintiff's case, her "residual functional capacity falls in between light and sedentary work" and "[b]ecause the residual functional capacity represents the 'most' the individual can do, the ALJ correctly classified Plaintiff's residual functional capacity as a limited range of light work as opposed to more than an ability to perform sedentary work." [R. 15, pp. 6, 7].

The Commissioner is correct. "[N]ot all individuals fall into single categories" and "[s]ometimes a claimant falls between two 'ranges of work,' such as when someone 'can perform more than light but less than medium work,' . . . making the individual potentially eligible in one direction but not the other." *Blackburn*, 748 F. App'x at 48. "For these in-between situations, the grids provide all they can—general guidance—and an administrative law judge consults vocational

experts with 'specialized knowledge' to make an informed decision about what jobs a claimant can do." *Id.* (citing SSR 83-12, 1983 WL 31253, at *2–3 (Feb. 26, 1979)).

In *Blackburn*, the Sixth Circuit expressly found that where, as here, the claimant "fell somewhere between the sedentary and light work categories," and given her "age, prior work history, and education, the sedentary work grid would grant her benefits" but "[t]he light work grid would not," the administrative law judge "correctly consulted a vocational expert." *Id.* at 48, 47. Likewise, because Plaintiff's RFC put her capabilities somewhere between light and sedentary work, ALJ Mangus properly consulted a vocational expert.[2] Considering all relevant evidence, including the vocational expert's testimony, ALJ Mangus found that Plaintiff could perform a limited range of light work, and specifically accounted for Plaintiff's inability to "lift[] or carry[] more than ten pounds occasionally" along with her other properly-supported limitations. [Tr. 19]. The Court finds no error. *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x. 419, 429 (6th Cir. 2015) (rejecting claimant's suggestion "that there is an either/or dichotomy between light work and sedentary work, and because she could not perform a full range of light work, she must necessarily have only been able to do sedentary work").

Plaintiff also notes ALJ Mangus failed to address her meralgia paresthetica and ischemic heart disease when considering her severe and non-severe impairments. [R. 14-1, p. 2]. The Commissioner submits that Plaintiff "presented no argument on this issue, and it therefore should be waived." [R. 15, p. 3 n.1]. Indeed, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues

---

[2] Moreover, as will be discussed further below, ALJ Mangus properly relied on the vocational expert's testimony, despite Plaintiff's contrary assertions.

not fully developed and argued to be waived"). Whether or not Plaintiff waived this argument by failing to develop it, the fact that ALJ Mangus did not assign a designation to Plaintiff's meralgia paresthetica and ischemic heart disease at step two is not reversible error. The regulations do not require an administrative law judge to designate each impairment as "severe" or "non-severe." 20 C.F.R. § 404.1520(a)(ii). The severity standard at step two is merely a threshold inquiry that, if satisfied by the evidence presented by a claimant, allows the administrative law judge to proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523(c). ALJ Mangus determined that Plaintiff had severe impairments sufficient to proceed to step three. Therefore, "[t]he fact that some of [claimant]'s impairments were not deemed to be severe at step two is [] legally irrelevant." *Rhodes v. Comm'r of Soc. Sec.*, No. 3:17-CV-167-RGJ-CHL, 2019 WL 7643879, at *6 (W.D. Ky. Mar. 7, 2019) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

For all these reasons, the Court finds no error with respect to ALJ Mangus's RFC determination.

### B. Vocational Expert Testimony

Plaintiff asserts that VE Mays offered inaccurate testimony that conflicted with the DOT and that ALJ Mangus failed to resolve those inconsistencies. [R. 14-1, p. 10]. In response, the Commissioner suggests VE Mays "provided a reasonable explanation for how Plaintiff could perform the jobs that [s]he identified" and that ALJ Mangus sufficiently "addressed the vocational expert testimony and Plaintiff's ability to perform reduced light work in the decision[.]" [R. 15, p. 9].

During the first four steps of the sequential analysis, the claimant has the burden of proof, but at step five the burden shifts to the Commissioner. *See Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th

Cir.1980)); *Cole v. Secretary of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). At step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

As discussed above, the ALJ must consult an impartial vocational expert when a claimant's RFC places her between two ranges of capable work. *See Blackburn*, 748 F. App'x at 48. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At the hearing, ALJ Mangus posed several hypotheticals to VE Mays. First, she inquired into whether a hypothetical individual of Plaintiff's age, education, and work experience with various restrictions could perform Plaintiff's past relevant work. [Tr. 42]. VE Mays testified that all past relevant work would be eliminated as generally performed. *Id.* When asked whether any light jobs existed in the national economy that could be performed by such an individual, VE Mays testified that there were. *Id.* ALJ Mangus specifically asked VE Mays if the hypothetical individual would be limited to sedentary work, and VE Mays indicated the individual would not be so limited. *Id.*

ALJ Mangus then asked VE Mays to elaborate on what light jobs were available for the hypothetical individual, to which VE Mays answered, "ticket seller," with approximately 15,013 in the national economy, "router," with approximately 34,924 in the national economy, and "ticket taker," with approximately 5,408 in the national economy. [Tr. 43–44]. Because those jobs are classified by the DOT as "light," but the hypothetical individual with Plaintiff's capabilities would

8

require the additional limitations outlined in the RFC, ALJ Mangus asked if VE Mays's professional experience led her to believe the jobs would "not require lifting more than ten pounds occasionally" or "standing and walking more than four hours during an eight-hour day." [Tr. 44]. VE Mays confirmed that her experience informed her testimony, opining,

> They're classified as light jobs and we've all seen a ticket taker before – an individual that sits in front of the movie theatre or if you go to a, or an event, or if you go to . . . a zoo, you see them sitting in those little booths taking tickets. We've all seen a ticket seller, at a bus station, at a movie theatre, or any event that you're trying to get into for entertainment, that sits in a booth which is very similar. And then the router is the individual, that's a clerical position. The responsibilities of that position is making labels for packages. And it's classified as a clerical job, so . . . all three of those jobs are primarily sitting down and you have the flexibility to sit/stand, at will, performing all three of these jobs.
> . . .
> And you work instruments [] no greater than 10 pounds, Judge. Because you just lift like, with the router, you just work with a computer and lifting paper. A ticket taker and a ticket seller, you [are] just dealing with tickets and that's, that's not even a pound.

[Tr. 44–45].

Later in the hearing, ALJ Mangus posed a hypothetical with all the same limitations as the first, except the individual "would need to alternate between sitting and standing every 15 to 20 minutes." [Tr. 51]. In that case, VE Mays testified that no jobs would be available. *Id.* ALJ Mangus then confirmed that VE Mays did not intentionally deviate from the DOT in her testimony, other than the previously explained "conflicting" testimony, which was formed by her professional observations and experience. *Id.* VE Mays provided, "Overhead reaching is not addressed in the DOT, nor is a sit/stand option. Those factors are based upon my experience, education, and research, but other than that my testimony is consistent with the DOT." *Id.*

At that point, Plaintiff's counsel examined VE Mays and inquired as to "why those jobs are classified as light if they're essentially . . . sedentary limits." [R. 52]. Counsel clarified that she was referring specifically to the "router" job, which requires an individual to be able to lift twenty

9

pounds. [R. 53]. VE Mays explained, in essence, that because the DOT has not been updated since 1991, she relies on her "observations of this job and how it is performed now," since it has "completely changed" in the thirty years since. [Tr. 57].

Social Security Ruling 00-4P provides for how conflicts between a vocational expert's testimony and the DOT should be resolved:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. . . . Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P (S.S.A. Dec. 4, 2000). SSR 00-4P also provides "reasonable explanations" that may explain such conflicts. *Id.* Because a vocational expert's training and experience can inform her opinion, conflicts may occur when testifying about information not listed in the DOT, "since the DOT does not contain information about all occupations." *Id.* Likewise, such conflicts may arise when the expert learns from other reliable publications, directly from employers, or from the expert's professional experience "information about a particular job's requirements or about occupations not listed in the DOT," or when the expert testifies to the range of requirements of a particular job as it is performed in specific settings, since the DOT only accounts for the maximum requirements of occupations as generally performed. *Id.*

In accordance with SSR 00-4p, ALJ Mangus reconciled the inconsistencies between VE Mays's testimony and the DOT. She explicitly noted,

> Although the vocational expert's testimony is inconsistent with the information contained in the *Dictionary of Occupational Titles*, there is a reasonable explanation for the discrepancy. Despite the standing/walking limitations, lifting no more than ten pounds, and overhead reaching limitations; the expert testified

10

> that the claimant could perform some light exertion work as determined above, and the expert testified it is because the jobs have evolved since the *Dictionary of Occupational Titles* was published in 1991. Further, as defined above, light work limits lifting to no more than twenty pounds *at a time* and no more than ten pounds *frequently* per 20 CFT 404.1567(b). Even though weight lifted in a specific occupation may be very little, a job will fall into light exertion per the Dictionary of Occupational Titles if there is walking and standing in excess of the limits allowed by sedentary exertion.

[Tr. 23]. This explanation is reasonable and is sufficient under the regulations. *See O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) ("All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict.").

Moreover, it was not error for ALJ Mangus to rely on VE Mays's testimony simply because some of her testimony differed from the DOT. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 847 (6th Cir. 2004) ("An ALJ may rely on vocational expert testimony notwithstanding contrary conclusions in the DOT if the expert is found to be credible, and the question posed to the expert accurately reflects the claimant's physical and mental limitations.") (citations omitted). Here, the hypotheticals posed to VE Mays accurately reflected Plaintiff's limitations, and Plaintiff does not argue otherwise. Moreover, as previously stated, it is not the job of a reviewing court to decide questions of credibility. *See Cutlip*, 25 F.3d at 286 (internal citations omitted). Other than the discrepancies between her testimony and the DOT discussed herein, Plaintiff points to no evidence to otherwise indicate that VE Mays was not a credible witness. ALJ Mangus did not err in relying on VE Mays's testimony.

Furthermore, "even if the [] position[] about which there were inconsistencies had been excluded, the ALJ still could have reasonably found that [Plaintiff] could perform the" other two positions named by VE Mays. *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir.

11

2006) (citing *Troxal v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 80, 83 (6th Cir. 2004) (rejecting claimant's argument that testimony of VE was inconsistent with the description of certain jobs in the DOT because sufficient positions existed in the national economy to constitute a significant number of jobs even if all disputed jobs were eliminated). Thus, even excluding the disputed "router" position, there are still approximately 15,013 "ticket seller" positions and approximately 5,408 "ticket taker" positions in the national economy. This amounts to 20,421 total jobs in the national economy that Plaintiff could perform. "The Sixth Circuit has made clear that there is no 'magic number' that qualifies as 'significant' for the purposes of satisfying this prong of the disability inquiry," *Johnson v. Berryhill*, No. 4:16-CV-00106-HBB, 2017 WL 2454326, at *7 (W.D. Ky. June 6, 2017) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)), but it has deemed fewer jobs than available to Plaintiff here "significant." *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding only 6,000 jobs nationwide "fits comfortably within what this court and others have deemed 'significant'"). Thus, even if ALJ Mangus erred in accepting the disputed portion of VE Mays's testimony, the error was harmless.

Lastly, Plaintiff briefly suggests that ALJ Mangus erroneously failed to consider the transferability of her past work experience when ALJ Mangus identified jobs in the national economy she could perform. [R. 14-1, p. 2]. Plaintiff offers that because "[t]he jobs identified by the ALJ (router, ticket taker and ticket seller) are not at all similar or transferable to her past work at Wal-Mart," ALJ Mangus was required to discuss the transferability of her prior experience at Wal-Mart. *Id.* at 9. The Commissioner did not respond to this argument.

20 C.F.R. § 404.1568 defines transferable skills, states how the agency determines that skills are transferable to other jobs, and describes a range of degrees of transferability of skills. "The regulation does not explicitly mandate the enumeration of transferable skills at step 5" and a

12

plaintiff's "conclusory argument does not supply a basis for reading such a requirement into the regulation." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004). Social Security Ruling 82-41 reads, "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision," and "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified." SSR 82-14, 1982 WL 31389, at *7 (1982).

In *Wilson*, the Sixth Circuit confronted the same argument Plaintiff has presented here—that "the ALJ's failure to identify [] transferable skills constitutes reversable error"—and deemed it "unpersuasive." 378 F.3d at 549. Instead, the Court "defer[red] to the Commissioner's view" that "[the relevant passages of SSR 82–14] apply only when an ALJ relies solely on the grid, in which cases the ALJ must ascertain whether the claimant has transferable skills in order to apply the grid." 378 F.3d at 549–50. This, the Court explained, is because "an agency's interpretation of its own regulation is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation," and the Commissioner's interpretation of SSR 82–41 "appear[ed] reasonable." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578 (6th Cir. 2003)). Because ALJ Mangus did not rely solely on the Grid to identify jobs Plaintiff could perform at step five, ALJ Mangus was not required to discuss the transferability of Plaintiff's skills.

The Court finds no error with respect to ALJ Mangus's reliance on VE Mays's testimony or with her findings at step five generally.

## IV.     Conclusion

In sum, ALJ Mangus's RFC determination was supported by and consistent with the record evidence, and ALJ Mangus did not err in relying on VE Mays's testimony. Although Plaintiff has

13

pointed to some evidence that could support a disability finding, it is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey*, 987 F.2d at 1233. The undersigned finds no error in ALJ Mangus's determination. For these reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The final decision of the Commissioner is therefore **AFFIRMED.**

This the 30th day of May, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies: Counsel of Record